UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
OMAR PEREZ, CATHERINE YAAYAA WHALEY-
WILLIAMS and ANTHONY WILLIAMS,

Plaintiffs,

vs.                                                              **COMPLAINT**

ENLARGED CITY SCHOOL DISTRICT OF
MIDDLETOWN and AMY CREEDEN,

Defendants.
-----------------------------------------------------------------------x

By and through their counsel, Michael H. Sussman, Esq., plaintiffs complain

of defendants as follows:

**PRELIMINARY STATEMENT**

Defendants have engaged in systematic retaliation in violation of

plaintiffs' First Amendment rights to free speech and association and racial

discrimination in violation of plaintiffs' right, as guaranteed by the

Fourteenth Amendment to equal protection of the laws.

**PARTIES**

1. Plaintiff Omar Perez is an adult of legal age who resides in the County of

   Orange and was employed before his forced resignation in the spring of

   2022 by defendant Enlarged City School District of Middletown

   [ECSDM]. He is of African American and Latinx descent.

2. Plaintiff Catherine YaaYaa Whaley-Williams is an adult of legal age who resides in the County of Orange and is employed by defendant ECSDM. She is African American and is married, as she has been at all relevant times, to plaintiff Anthony Williams.

3. Plaintiff Anthony Williams is an adult of legal age who resides in the County of Orange and is employed by defendant ECSDM. He is African American and is married, as he has been at all relevant times, to plaintiff Catherine YaaYaa Whaley-Williams.

4. The ECSDM is a municipal corporation organized to do business in the State of New York. It is governed by an elected nine-member school board.

5. Defendant Amy Creeden is the duly appointed authorized Superintendent of Schools and has been personally involved and approved each of the decisions referenced herein. She resides within this judicial district and committed all the actions and omissions complained of herein under color of state law.

## **JURISDICTION**

6. As plaintiffs allege that defendants have violated their rights as guaranteed by the First and Fourteenth Amendments to the United States Constitution, this Honorable Court has jurisdiction over this matter

pursuant to 28 U.S.C. secs. 1331 and 1343 and 42 U.S.C. secs. 1983 and 1988.

## STATEMENT OF FACTS

### OMAR PEREZ

7. Before his resignation, plaintiff Omar Perez was a tenured House Dean at Middletown High School and has performed his job in an exemplary manner, gaining broad respect from his students and the community.

8. He received tenure in mid-June 2021 and then was lauded by the superintendent and school board members for the quality of his leadership at Middletown High School.

9. After receiving tenure, plaintiff Perez expressed concern to the former superintendent of schools, Richard del Moro, about the school district's failure to keep female staff and students safe from sexual abuse/assault in the high school and the coddling manner of official response to such sexual assault.

10. Expressing such concern was not a component of Perez's job duties; rather, he spoke as a citizen concerned that the district was engaging in institutional misogyny.

11. Following this advocacy, in August 2021, the former school superintendent advised Perez that he was being reassigned to an Assistant Principalship at the annex to the Truman Moon Elementary School.

12. As House 2 Dean at Middletown High School, Perez had directly served hundreds of students.

13. In this new position, plaintiff Perez would be Assistant Principal in an annex with eighteen students.

14. On August 12, 2021, two days after receiving this new assignment, plaintiff Perez attended the Board of Education meeting and spoke about the devaluation of minority educators in which the district engaged and urged the district's constituents to attend the next Board meeting and oppose this pattern, exemplified by his own re-assignment.

15. At the next Board meeting in late August, numerous members of the community rallied to support plaintiff Perez, petitioning the ECSDM and attending the meetings to protest his reassignment and oppose the relegation of talented minority administrators to invisible jobs.

16. At this meeting, under this pressure, the former superintendent of schools, Richard del Moro, reversed his reassignment of plaintiff Perez and suddenly resigned from the superintendency after decades associated with the district.

17. The School Board then committed to do a national search for his successor and appointed a Caucasian administrator who had long worked for the district, defendant Amy Creeden, as Interim Superintendent.

18. Del Moro had consulted Creeden before reassigning Perez to the Truman Moon annex.

19. In March 2022, shortly after the School Board announced that it was not conducting any national search and appointed defendant Creeden as Superintendent of Schools, she shifted course and attacked Perez.

20. Specifically, during the school day on March 18, 2022, Perez was due to participate in a Professional Development [hereinafter "PD"] session at the high school.

21. However, as he was proceeding to this session, several professional emergencies detained him, and he arrived after the PD commenced.

22. Rather than appreciate that plaintiff Perez had been required to deal with exigent issues, defendant Creeden chastised him for being late.

23. Plaintiff Perez responded by explaining that he needed to deal with these emergent situations.

24. Within two days, defendant Creeden presented Perez with this alternative: either agree to a 30 day leave of absence and get psychiatric clearance before returning to work or she would ask the School Board to

mandate a psychiatric evaluation of him under Section 913 of the New York Education Law.

25. Nothing about Perez's job performance or mental health motivated, or could have motivated, defendant Creeden's ultimatum.

26. Rather, having received an appointment as school superintendent, she implemented the district's practice of retaliating against administrators who dared to speak out about the racial bias which permeates the school district, as Perez had done in August 2021, and refused to "accept their place".

27. Said pattern had been made manifest when Perez was initially selected for reassignment to a position with much less visibility and status after raising issues with the former Superintendent about equity in district hiring, promotion, student discipline and the district's disregard of sexual abuse against young women of color.

28. Creeden's ultimatum stigmatized Perez, forced him from the workplace, and caused him substantial emotional distress and anguish.

29. Plaintiff Perez complied with the district's direction to have a Section 913 evaluation.

30. Said evaluation was instituted in bad faith with the concurrence of the majority of the Board of Education, though Superintendent Creeden presented no non-frivolous basis for its initiation.

31. On information and belief, the evaluation cleared plaintiff Perez to resume his duties and found no psychiatric basis to alter them.

32. However, the district did not advise Perez of this conclusion or welcome him back to his job.

33. Instead, while he was out of work, the district eliminated the deanship he successfully occupied.

34. Having been so stigmatized for his advocacy for non-discrimination in the district's schools and cognizant that the district was eliminating his position, plaintiff Perez sought and attained a position in Yonkers, New York as a school administrator.

35. To fulfill the responsibilities of that position, Perez must commute a far greater distance than to Middletown, and he is not paid a salary equal to that he previously earned.

## CATHERINE YAAYAA WHALEY-WILLIAMS

36. Before the fall 2021, for more than three years, plaintiff Catherine YaaYaa Whaley-Williams had served as the district's coordinator of Mathematics for grades K-12.

37. Plaintiff Whaley-Williams performed at a high level and, like Perez, earned a sterling reputation as an educator.

38. Plaintiff Whaley-Williams is an experienced school administrator who has a record of effectively discharging her professional responsibilities.

39. Before engaging in her protected speech as set forth below, plaintiff Whaley-Williams was never the subject of any discipline, counseling, or criticism for the performance of her job duties or otherwise.

40. When she engaged in her constitutionally protected speech, Plaintiff Whaley-Williams did not have tenure and was due to be granted tenure in the summer 2022.

41. As a non-tenured administrator, plaintiff Whaley-Williams had a statutory right to be informed of any relevant performance deficiencies that might affect her tenure-worthiness.

42. Before she spoke out as set forth below, plaintiff Whaley-Williams received no such advice.

43. On August 12, 2021, plaintiff Whaley-Williams spoke out in support of her professional colleague, Omar Perez, at a public-school board meeting, explaining to defendants the systemic racism which plagued the school district.

44. Defendant Creeden was present when plaintiff Whaley-Williams spoke.

45. Plaintiff Whaley-Williams explained that she was removing her mask to speak, the mask she needed to wear as an administrator, the mask she and other people of color needed to wear to hide their response to the profound institutionalized racism with which they daily dealt.

46. Williams explained that the district claimed a desire to hire more people of color but had created a hostile work environment for the minority educators it had hired and needed to cure this before seeking to recruit others.

47. As with plaintiff Perez's speech acts, plaintiff Whaley-Williams spoke as a citizen and was not required to so speak as part of her job duties and responsibilities.

48. As with plaintiff Perez's speech acts, plaintiff Whaley-Williams spoke out in a public forum and addressed issues of public concern, identifying herself as a parent of children who attended school in Middletown and as a person concerned about continuing acts of racial bias which would affect her children and other students.

49. Since she has so spoken, plaintiff Whaley-Williams has been the target of hostile and adverse acts by members of the administration of the ECSDM, to wit: [a] she was baselessly called into a meeting and advised that her attendance was wanting and a cause of concern; [b] in fact, she

had not used up her contractual days off during the 2020-21 or 2021-22 school year; [c] Creeden substantially curtailed her duties and responsibilities, making her responsible for math education at one elementary school [effective July 1, 2022] and stripping her of district-wide responsibilities for supervising the delivery of mathematics education in the district; [d] on July 7, 2022, the district denied her tenure without any basis or cause and despite her superlative job performance, the absence of any notice of any substantive issues with her performance and overwhelming support she received from the community at the July 7, 2022 meeting; [e] before this, rather than agree to recommend plaintiff for tenure, in late May 2022, defendant Creeden offered plaintiff a JUUL, intended to extend her tenure review period by one year.

50. An administrator like Whaley-Williams could not legally obtain tenure in the State of New York without the support of the School Superintendent.

51. Defendant Creeden refused to support Whaley-Williams's bid for tenure because of plaintiff's advocacy for racial justice in the district and the strong support she and her husband. plaintiff Anthony Williams. had garnered from the community for their advocacy.

52. In offering the JUUL, defendant Creeden advised plaintiff that she needed to improve her job performance.

53. When plaintiff asked defendant Creeden to define the measures by which she would be judged were she to accept the JUUL, the superintendent refused to specify any such measures or criteria for judgment.

54. Plaintiff Whaley-Williams understood the offer of a JUUL as a confession by the district that she well performed her duties and responsibilities and that her personnel file contained no documents which would otherwise support the denial of her tenure.

55. Rather, defendant Creeden intended to further humiliate plaintiff by the JUUL offer and to provide herself and others an opportunity to "paper the file" and create a basis for denial of tenure.

56. Defendant Creeden orchestrated and directed each of the baseless, adverse, and discriminatory actions visited upon plaintiff Whaley-Williams as set forth in para. 49 above.

57. In 2020-21, plaintiff Whaley-Williams was absent from school three days less than the number of days permitted by her contract.

58. At the meeting on March 26, 2022 at which she was first chastised and threatened for her allegedly poor attendance, plaintiff explained that the days she took off were occasioned by COVID and/or childcare issues

relating to her two small children and that she was within her rights to so use days provided by contract.

59. During more than three years of employment, before March 26, 2022, defendants had provided no notice to plaintiff Whaley-Williams in any form of any concern about her time and attendance.

60. During the 2021-22 school year, plaintiff Whaley-Williams took off one-half the number of days to which she is contractually entitled.

61. After the March 26, 2022 meeting, plaintiff Whaley-Williams discussed her time and attendance with another high ranking administrator who told her that she had no concerns about plaintiff in these regards.

62. Defendant Creeden has not threatened Caucasians who have similar or worse attendance records or employees who did not speak out about systemic racism in the school district.

63. Because of these adverse actions, plaintiff Whaley-Williams has suffered substantial emotional anguish and humiliation and stands to suffer continued emotional distress as well as substantial pecuniary loss.

## **ANTHONY WILLIAMS**

64. Plaintiff Anthony Williams is married to plaintiff Whaley-Williams.

65. For the last nearly five years, plaintiff Williams, a school counselor by training and certification, served as Dean of Student Support Services at Middletown High School.

66. Like Perez and his wife, plaintiff Williams has been deeply involved in giving back to the Middletown community and was [and remains] beloved within the school community.

67. In his professional position, plaintiff Williams oversaw a unit responsible for working with students in crisis and assisting other staff in responding to such situations.

68. As with his co-plaintiffs, plaintiff Williams received no performance evaluations as required by state law but received praised for his job performance.

69. In June 2021, before his wife's advocacy, the School Board granted plaintiff Williams tenure as an administrator in the title of Dean of Counseling Services.

70. At the time, Williams had a school district administrator license [SDL], not a school building administrator license [SBL].

71. The district's own job posting required either administrative license, listing them as equivalent, satisfactory licenses for the position.

72. Fully cognizant of his certification, the district granted plaintiff Williams his position and then tenure in that position.

73. However, after his wife's protected speech acts as described above, defendant Creeden and the School Board stripped plaintiff Williams of his responsibilities, created a position superordinate to his to run counseling programs in the high school and disallowed him from competing for said position despite his obvious qualifications to discharge the duties and responsibilities thereof.

74. Defendants have also made it impossible for plaintiff Williams to apply for this position by requiring as a qualification for it that any successful candidate have worked several years as a teacher.

75. Defendants knew full well that plaintiff Williams was certified as a school counselor, not a teacher, disqualifying him for applying for this administrative position.

76. Defendants had no non-discriminatory or retaliatory reason for this job qualification and inserted it to exclude plaintiff Williams from consideration.

77. Following this demotion, defendant Creeden and the School Board went further, notifying plaintiff Williams that he did not have the proper state certification to discharge his position, the same one for which he had

been tenured the prior June, and requiring him to obtain a SBL certificate by early June 2022 or face termination.

78. When they so required plaintiff to obtain such a certificate, defendants knew that doing so would be impossible and that any such requirement could be either waived entirely or delayed in operation by the State Education Department.

79. Defendants so acted in reprisal for plaintiff Williams' association with his wife, plaintiff Whaley-Williams, and in further punishment for her speech acts, which highlighted its systemic racism.

80. Defendants did not genuinely believe that Williams was unable or unqualified to discharge his duties; on the contrary, upon plaintiff Perez's suspension as described above in March 2022, defendants assigned plaintiff Williams to discharge Perez's duties as House Dean in addition to his own duties and responsibilities.

81. Defendants offered plaintiff Williams no compensation for his vastly increased duties.

82. In at least one prior instance, when a House Dean was unavailable to fulfill his duties, the district employed a third party to replace him.

83. By diminishing his own job responsibilities in the area in which he is certified, by requiring him to perform another's duties without

compensation, and by threatening to terminate and then terminating his employment for a pretextual reason, defendants treated plaintiff Williams in a retaliatory and discriminatory manner, unlike the manner it has treated any Caucasian administrator and any administrator not married, as Williams is, to a staunch advocate for racial equity as plaintiff Whaley-Williams.

84. By dint of said racial discrimination and retaliation, defendants have caused plaintiff Williams substantial emotional distress, anguish, and pecuniary loss.

85. While so treating the three plaintiffs who have either spoken out about its racist practices or are married to someone who has done so, defendants have recently placed several less qualified African Americans in untenured administrative positions, including the wife of a school board member who the district had repeatedly rejected for employment, to administrative positions, and promoted Caucasians to newly created administrative positions.

86. Those so hired and/or promoted have not spoken out about racism in the district as have plaintiffs Perez and Whaley-Williams and are not and were not married to a person who spoke out against systemic racism in the school district like plaintiff Williams.

87. As set forth above, defendants' conduct has been intentional and motivated both by racial bias and retaliation for protected speech acts by plaintiffs or, in the case of Williams, his wife.

## CAUSES OF ACTION

88. Plaintiffs incorporate paras. 1-87 as if restated in full herein.

89. By deeming plaintiff Perez of questionable mental fitness to continue to discharge his professional duties and requiring him to submit, without basis, to a mental competency examination while keeping him out of school and thereby subjecting him to public humiliation and stigmatization, defendants intentionally discriminated against him on the basis of race and racial stereotypes in violation of the Fourteenth Amendment to the United States Constitution, as made actionable by 42 U.S.C. section 1983.

90. By deeming plaintiff Perez of questionable mental fitness to continue to discharge his professional duties, suspending him and subjecting him to inquiries concerning his status, defendants intentionally retaliated against him for his speech about matters of public importance in violation of the First Amendment to the United States Constitution, as made actionable by 42 U.S.C. section 1983.

91. By demoting, restricting her duties and responsibilities, and then denying tenure to plaintiff Whaley-Williams, defendants intentionally

discriminated against her based on her race in violation of the Fourteenth Amendment to the United States Constitution, as made actionable by 42 U.S.C. section 1983.

92.  By demoting plaintiff Williams, restricting her duties and responsibilities, and denying her tenure, defendants intentionally retaliated against her for her speech about matters of public importance in violation of the First Amendment to the United States Constitution, as made actionable by 42 U.S.C. section 1983.

93.  By creating qualifications for a new position superior to that which he now holds and which he is otherwise entirely qualified to fulfill, and by assigning him the duties and responsibilities of another full-time position without compensation or consideration, defendants intentionally discriminated against plaintiff Williams on the basis of his race in violation of the Fourteenth Amendment to the United States Constitution, as made actionable by 42 U.S.C. section 1983.

94.  By creating qualifications for a new position superior to that which he now holds and which he was otherwise entirely qualified to fulfill, and by assigning him the duties and responsibilities of another full-time position without compensation or consideration, and by establishing a qualification for his current position which he could not possibly meet in the time

provided under threat of termination, and by then terminating him for his

failure to meet that concocted requirement, defendants intentionally

punished plaintiff Williams for his association with his wife, plaintiff

Whaley-Williams, in violation of the First Amendment to the United States

Constitution, as made actionable by and through 42 U.S.C. section 1983.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs pray that this Honorable Court: accept

jurisdiction over this matter; empanel a jury to hear and decide all issues

within its authority; award to plaintiffs and against defendants compensatory

damages; award to plaintiffs and against defendant Creeden punitive

damages for her wanton violation of their civil and constitutional rights as

set forth above; enter equitable relief to reverse and/or annul the retaliatory

and discriminatory decisions set forth herein and any other like and further

decisions which befall plaintiffs or any of them, and, pursuant to 42 U.S.C.

section 1988, award to plaintiffs the attorneys' fees and costs incurred

during this litigation and any other relief the interests of justice and equity

require.

Dated:  July 26, 2022

Respectfully submitted,

Michael H. Sussman [3497]

19

SUSSMAN & ASSOCIATES
PO BOX 1005
GOSHEN, NEW YORK 10924
(845)-294-3991
Sussman1@sussman.law

Counsel for plaintiffs